**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| BOARD OF COMMISSIONERS FOR DOUGLAS COUNTY, COLORADO,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CROWN CASTLE USA, INC. and T-MOBILE WEST LLC,<br><br>　　　　　　Defendants. | Civil Action No.  17-cv-03171-RM-MJW |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants/Counter-Plaintiffs Crown Castle and T-Mobile, by and through their attorneys and pursuant to Federal Rule of Civil Procedure 12(c), hereby submit this Motion for Judgment on the Pleadings.  In support of this Motion, Defendants state as follows:

In 2017, Crown Castle and T-Mobile ("Applicants") submitted an application to modify an existing wireless facility located in rural Douglas County ("Application"), in order to enhance wireless service and utilize new frequencies licensed to T-Mobile by the Federal Communications Commission ("FCC" or "Commission").  These kinds of modifications must be routinely performed on wireless facilities, as technology advances and network needs change.  In 2012, recognizing that local jurisdictions were unreasonably delaying wireless technology upgrades, Congress enacted Section 6409(a) of the Middle Class Tax Relief and Job Creation Act, which mandates that local jurisdictions may not deny, and shall approve, eligible facilities requests ("EFRs")—i.e., those requests that do not result in a substantial change to the physical dimensions of an existing facility.  In implementing Section 6409, the FCC defined "substantial change," set out a series of timing requirements for local jurisdictions, and determined that an EFR not acted upon by the deadline is deemed granted.

The Application at issue here is precisely the type of request that Congress had in mind when it enacted Section 6409.  In seeking to add just one foot to the overall height and less than two feet to the diameter of the facility, Applicants were well within the EFR size limits (which, in this case, would have been 10 and 20 feet, respectively), and Applicants proposed retaining the shroud that fully conceals the antennas from view.  The County, though, refused to act on the Application, claiming that the increase in size defeated the "concealment elements" of the existing pole.  Ultimately, pursuant to federal law, T-Mobile was forced to send a "deemed grant" letter to the County in December, which the County challenged in this Court.

In addition to arguing the Application was not an EFR, the County now takes the position that it *did* deny the Application, back in June 2017, and that Applicants' December deemed grant letter was therefore untimely.  It rests this claim on a June 29 memorandum ("Memorandum"), but the Memorandum did not deny the Application.  The County is either trying to rewrite history, or it intentionally tried to put the Applicants in limbo, without the clear right to seek immediate review but nevertheless subject to a ticking clock that the County could later invoke to claim Applicants had waived their rights.  Either way, the County's conduct should not be rewarded.

Because the questions raised by the County's complaint and Applicants' counterclaims can be resolved wholly as a matter of law, this Court should grant judgment on the pleadings to the Applicants and allow them to proceed with the modification.  Rapid resolution of this dispute will vindicate the clear federal interest in speedy wireless deployment that is embodied in Section 6409.

## I.     STANDARD OF REVIEW

"A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss." *Ciber*,

*Inc. v. ACE Am. Ins. Co.*, 261 F. Supp. 3d 1119, 1125 (D. Colo. 2017). "[I]n ruling on a motion for judgment on the pleadings, courts look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief—that is, a complaint must include 'enough facts to state a claim for relief that is plausible on its face.'" *Id.* (quoting *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)). Reviewing courts will "accept[] as true the well-pled factual allegations of the opposing party and draw[] all reasonable inferences in its favor." *Id.* (citing *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005)). The court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the court is "not bound to accept as true a legal conclusion couched as a factual allegation,'" *id.* (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When a local jurisdiction fails to act within the requisite period on an application covered by Section 6409, 47 U.S.C. § 1455, that application is deemed granted by operation of law, effective upon notification to the jurisdiction in writing by the applicant. 47 C.F.R. § 1.40001(c)(4); *Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, Report and Order, 29 F.C.C.R. 12865, ¶ 236 (2014) ("*2014 Order*"). A reviewing authority is permitted to challenge the deemed grant in any court of competent jurisdiction, but as the challenging party it bears the burden of showing that the deemed grant is not effective. *Id.*

## II. STATEMENT OF FACTS

Applicants submitted an EFR application on April 27, 2017 to modify an existing support structure in Douglas County pursuant to a process established by the County's Department of Community Development—Planning Services. The application was not complete; Applicants requested a copy of the original site improvement plan from the County so that they could redline it, showing the proposed changes. On May 4, 2017, Douglas County Planning Services staff provided the requested document and acknowledged receipt of the EFR application. On May 18, 2017, Applicants returned a redline of the site improvement plan provided to Applicants by the County, the last item submitted in support of the Application.

Following the submission of the Application, Planning Services staff discussed with Applicants the staff's view that the proposed modifications would defeat the concealment elements of the existing facility. Plaintiffs allege that the County "found . . . that the canister expansion did, in fact, defeat the concealment elements of the structure," though Plaintiffs do not allege that this finding was in writing. Despite the alleged finding, Planning Services did not deny or otherwise reject the Application. Compl. ¶ 61 (Doc. 1). Instead, the County "sought to work with Applicant[s] to determine an alternative path through which Applicant[s] could obtain approval." *Id.* On June 22, 2017, the Applicants had an in-person meeting with Planning Services staff, where Planning Services "verbally confirmed its determination" that the Application "could not be approved" as an EFR, because it defeated the stealth design of the facility. *Id.* ¶ 63.

Plaintiffs do not allege that this "verbal[] confirm[ation]" was itself a denial, nor do they allege that it was followed by an actual written denial. Rather, on June 29, 2017, the County sent a "Presubmittal Review" Memorandum to Applicants summarizing the parties' June 22, 2017

meeting, a copy of which is attached to the Complaint as Exhibit A (and is therefore properly considered by this Court). Plaintiffs' Complaint alleges that the Memorandum "included formal written notice to Applicant . . . that the May 18, 2017 Application 'does not meet the approval standards[.]'" *Id*. ¶¶ 63-64 (alteration in original). Plaintiff's allegations are artfully drafted to avoid claiming that the Memorandum *denied* the Application. In fact, the "approval standards" referred to in Exhibit A are not those dealing with Eligible Facilities Requests, as the Complaint implies, but rather those included in Douglas County's zoning guidelines, which are irrelevant to whether the site is covered by Section 6409. Compl. Ex. A. (Doc. 1-1).

Subsequently, T-Mobile (one of the Applicants) submitted a letter addressing the County's concerns about the facility ("Oct. 24 Letter," Compl. Ex. B (Doc. 1-2)). The Oct. 24 Letter states that it is a response to the concerns articulated by the County, and notes that under federal regulations this response restarted the 60-day shot clock for review of an EFR. Compl. ¶ 73. The County responded to the Oct. 24 Letter by asserting that there was no active application pending. The Complaint alleges that the County's response stated the Application had been denied "months earlier," *Id*. ¶ 75, but the Complaint is once again careful to not directly assert that such a denial occurred; as noted above, the Complaint itself does not characterize the Memorandum as a denial of the Application, and the Memorandum on its face does not purport to deny the Application.

T-Mobile issued a final letter on December 1, 2017 ("December 1 Letter," Compl. Ex. C). The December 1 Letter states "pursuant to applicable rules, if Douglas County wishes to contest that this application is DEEMED GRANTED, it has thirty (30) days from the date of this Notification to file a lawsuit in a court of competent jurisdiction to contest this DEEMED

GRANTED permit application status," Compl. Ex. C (Doc. 1-3). The County brought this action to challenge the deemed grant, and Applicants counterclaimed, seeking to enforce it.

## III.   THERE IS NO BASIS TO CHALLENGE THE DECEMBER 1 DEEMED GRANT.

### A.   The Applicants' Proposed Modification Was an EFR.

Applicants' request to modify wireless facilities on a structure in the County was an EFR within the meaning of federal law and the County was required to grant the Application. Plaintiff's argument that the request defeated the "concealment elements" of the structure must be rejected.

Section 6409 provides that "a State or local government may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station." 47 U.S.C. § 1455(a)(1). The FCC's rules provide additional guidance on Section 6409, including by providing that a proposed modification "substantially change[s] the physical dimensions" of the tower if it adds more than 10 percent or more than 10 feet to the height (whichever is greater), or if it adds an appurtenance that would extend more than 20 feet from the side of the tower. 47 C.F.R. § 1.40001(b)(7)(i). A change is also "substantial" if "[i]t would defeat the concealment elements of the eligible support structure." *Id.* § 1.40001(b)(7)(v).

The existing structure is a 35-foot-tall pole with a canister shroud concealing the wireless equipment on top. The Application proposed adding one foot to the overall height of the pole and increasing the diameter of the canister shroud by 20 inches. Ans. Ex. A (Doc. 15-1). Both dimensions are well within the limits prescribed by the FCC for Eligible Facilities Requests. The County does not contend that this change of less than two feet in size is a substantial change.

Instead, Plaintiff claims that it was not required to grant the Application pursuant to Section 6409 because the proposed changes somehow defeat concealment elements associated with the pole. But this is incorrect, as a matter of law. In the *2014 Infrastructure Order,* the FCC elaborated on the meaning of the concealment elements provision, noting that "a modification that undermines the concealment elements of a stealth wireless facility, such as painting to match the supporting façade or artificial tree branches, should be considered substantial." *2014 Order*, ¶ 200. The Commission emphasized that this only applies to "concealed or 'stealth'-designed facilities— i.e., facilities designed to look like some feature other than a wireless tower or base station," *id.*, and cited with approval the idea that even for such facilities, "the modification should qualify as an insubstantial increase as long as the concealment elements are maintained," *id.* n.545.

The County asserts that the facility here is a "stealth wireless communications facility" that was "specifically intended to look like other utility poles in the area." Compl. ¶ 48. In support of this legal conclusion, the Complaint cites the original Site Improvement Plan, alleging that "[t]he site improvement plan allowing for initial construction of the Subject Facility was approved because of the concealment elements of the structure's design," and that it was "the stealth design that satisfied a substantial portion of the approval criteria applicable to such facilities as set out" in the County's Zoning Regulations, *id.* ¶ 49.

The Site Improvement Plan, however, does not specify that the facility is intended "to look like other utility poles in the area," nor does it explicitly reference any "concealment elements of the structure's design" as prerequisites for approval. Instead, the Plan merely provides a physical description of the facility as it was approved in 2002; the Plan's description of the facility includes only two specific features that may arguably be "concealment elements," as the FCC envisioned

7

in the *2014 Order*. The first is that the antennas are "CONTAINED WITHIN CANISTER," Ans. Ex. E at 6 (Doc. 15-5), and the second is that the monopole be "COLOR: CHARLESTON BROWN," with a specified paint code, *id*. Both "concealment elements" are retained in the Application, which proposed continued use of a canister design painted an identical color to the existing facility (as specified in the Site Improvement Plan). Because these "concealment elements are maintained," the change "should qualify as [] insubstantial." *2014 Order*, ¶ 200 n.545.

The County's argument that the Application was not an EFR would require this Court to accept much looser, more subjective definitions of "stealth facility" and "concealment element" than are supported by either the *2014 Order* or the record in this case. In the County's view, local jurisdictions should have authority to unilaterally (and retroactively) designate which aspects of a facility's design are "concealment elements," and should also have the subjective discretion to determine when an otherwise-permissible change in size renders a pole insufficiently pole-like. *Id.*

But a subjective standard of this kind, which would leave local authorities with nearly complete discretion to reject modifications based on their appearance, regardless of their size and scope, is completely inconsistent with the FCC's view of Section 6409 and the tests that the agency adopted in the *2014 Order*. There, the Commission emphasized that it was adopting "an objective standard for determining when a proposed modification will 'substantially change the physical dimensions' of an existing tower or base station." *2014 Order,* ¶ 188. The agency concluded that it "should adopt a test that is defined by specific, objective factors rather than the contextual and entirely subjective standard advocated" by some commenters because, among other things, (a) Congress "took care to refer" to measurable "physical dimensions," rather than a more subjective set of criteria, (b) Congress intended the review of these facilities to take place in a timely fashion,

8

and applying subjective criteria would take longer, and (c) "disputes arising from a subjective approach would tend to require longer and more costly litigation to resolve," compared to those arising out of an objective standard. *Id.* ¶ 189. The FCC's use of an objective test is consistent with the past practice both of the agency itself, and with "the overwhelming majority of State collocation statutes adopted since the passage" of Section 6409, *id.* ¶ 190.

The County also suggests that its own regulations define the concealment elements for the facility in question. Compl. ¶¶ 43-47. But the cited Design Standards do no more than assert vague principles for integrating facilities into the surrounding environment; nowhere do the standards require that a pole be a particular diameter or even that it be a particular shape. *See, e.g.,* ¶ 47 (Design Standards specify that facilities must be "architecturally and visually (color, bulk, mass, size) compatible with surrounding existing buildings."). In fact, to the extent that the Design Standards mention "stealth or faux structures," the examples given ("windmills, silos and light standards") *do not* include the facility at issue in the Application. Compl. ¶ 46.

Thus, the County's claim here is that the particular size and shape of each and every facility constitute "concealment elements" that cannot be modified without resulting in a substantial change under Section 6409. This proves too much. If jurisdictions were permitted to construe the definition of concealment elements that broadly, the limited exception would swallow the rule: it would allow municipalities to completely circumvent the objective size limits that the FCC already imposed, and render Congress's focus on "physical dimensions" a nullity.

## B. Applicants' EFR Was Deemed Granted on December 1, 2017.

Section 6409(a) provides that state and local governments "may not deny, and shall approve" eligible facilities requests. 47 U.S.C. § 1455(1)(a). The statute itself does not establish

9

processing timeframes or prescribe procedures in the event a locality violates the statute and refuses to grant a covered application. In the absence of express statutory guidance on these issues, the FCC has promulgated implementing regulations that are intended to "reduc[e] delays in the review process for wireless infrastructure modifications" and "facilitat[e] the rapid deployment of wireless infrastructure," consistent with the intent of the statute. *2014 Order*, ¶ 15. The Commission's regulations were challenged on appeal and upheld by the Court of Appeals. *See Montgomery Cty., Md. v. FCC*, 811 F.3d 121 (4th Cir. 2015).

The FCC's rules require that a local government approve an EFR application within 60 days of submission. If an application is incomplete, a local government may toll this 60-day "shot clock" for review by providing written notice to the applicant within 30 days of submission which "clearly and specifically delineat[es] all missing documents or information." 47 C.F.R. § 1.40001(c)(3)(i). In the case of such a supplemental submission, the locality must notify the applicant of any deficiencies in the submission within 10 days. *Id*. § 1.40001(c)(3)(iii). The shot clock may also be tolled by "mutual agreement." *Id.* § 1.40001(c)(3). The FCC's rules do not require that mutual tolling agreements be in writing. *See id*. Finally, the FCC's rules provide that if a local government "fails to approve or deny" an EFR within the 60-day timeframe, as adjusted by any tolling, "the request shall be deemed granted." *Id*. § 1.40001(c)(4). However, "[t]he deemed grant does not become effective until the applicant notifies the applicable reviewing authority [of the grant] in writing." *Id*.

The present case followed exactly the trajectory envisioned by the FCC. The Applicants submitted a complete EFR on May 18, 2017, starting the 60-day shot clock for review. Following submission of the Application, County staff expressed doubts about whether it qualified as an EFR.

10

These discussions resulted in a meeting on June 22, which was memorialized in the written Memorandum on June 29. Because the Applicants believed the issues raised by the County could be addressed without litigation, and that through further collaboration the parties could "resolve their differences," *2014 Order,* ¶ 236, the Applicants treated the June 22 meeting as a request for additional information that tolled the shot clock. Compl. Ex. B. at 4.

On October 24, the Applicants provided additional information they believed would resolve the County's doubts and give the jurisdiction confidence that it was legally required to grant the Application, thereby restarting the shot clock. *Id*. The County did not request any missing information within 10 days of the Oct. 24 Letter and, accordingly, when the County neither granted nor denied the Application by November 18, the 60-day shot clock expired. On December 1, 2017, the Applicants exercised their rights under Section 1.40001(c)(4) and submitted a letter notifying the County that the Application was deemed granted as of that date.

### C.   The Deemed Grant Is Effective, and Applicants Are Entitled to Enforce It.

The Commission has established that parties may bring Section 6409 disputes in a court of competent jurisdiction (as opposed, for example, to bringing them to the agency). *2014 Order,* ¶ 236. The Commission "expects" parties to act "expeditiously," suggesting claims can reasonably be brought within 30 days of either a city's denial of an EFR or the notification of deemed grant by the applicant. Ultimately, however, the Commission found that "[t]he enforcement of such claims is a matter appropriately left to such courts of competent jurisdiction." *Id*. The County makes two arguments that even if the Application is covered by Section 6409, the Applicants' deemed grant is "void" and that the County's conduct is unchallengeable. Both must be rejected.

        1.     **The County Did Not Deny the Application on June 29, and Applicants Were Not Required to Bring Suit by July 29.**

First, the County claims that it denied the Application in its June 29 Memorandum, and accordingly the deemed grant is void and the denial is not subject to challenge because the Applicants did not bring suit within 30 days of the date of the Memorandum. Compl. ¶¶ 68, 85. Yet nowhere in the Memorandum does the County state that it was denying the Application or that the Application was not an EFR under Section 6409. In fact, the Memorandum does not even use any version of the terms "deny," "EFR," "substantial change," or "concealment element," nor does it cite Section 6409 or the Commission's implementing rules. *See* Compl. Ex. A.

What the Memorandum does say is that the "proposed design does not meet the approval standards" established by the *County's* regulations, which similarly do not reference federal law, use the term "concealment elements," or define criteria for stealth facilities with any specificity. The Memorandum "recommend[s] that [Applicants] consider alternative designs or locations that can accommodate the increased antennas and other equipment in a stealth manner," and then describes how the Applicants may revise the Application by submitting further documentation that "address[es] the comments from this Presubmittal Review." Compl. Ex. A.

Naturally, the Applicants did not consider this document to be a denial or a final determination that the request was not an EFR, and neither should this Court. The Memorandum uses no language that would indicate it was a denial, and its direction to submit supplemental information supports that it was not. Indeed, had the Applicants gone to court on the basis of the Memorandum in mid-2017, they would have faced serious ripeness issues. Without a clear, written denial, the County would have undoubtedly argued that the claim was not ripe.

Moreover, even if the document was ambiguous, that ambiguity should be resolved against the County. Particularly where deadlines are triggered by government action, there is a strong

policy interest in ensuring the action is clear, and that there is no doubt that the clock for bringing suit has been triggered. *See, e.g., Athens Cellular, Inc. v. Oconee Cty.*, 886 F.3d 1094, 1100 (11th Cir 2018) (noting that where there is a right of judicial review, local jurisdictions may not stymie or burden that right by failing to provide clear notice). Because the clarity of the denial is entirely within the control of the local jurisdiction, any doubt or ambiguity should be resolved against the County. Just as "a contract should be construed most strongly against the drafter," *United States v. Seckinger*, 397 U.S. 203, 210, 90 S. Ct. 880, 884, 25 L. Ed. 2d 224 (1970), a notification of this type that contains a purported ambiguity should be construed against the issuing party. That is especially so given the "Federal interest reflected in Section 6409(a)" to "expedite personal wireless service facilities siting." *2014 Order*, ¶¶ 236, 243.

      Finally, assuming *arguendo* that the Memorandum could properly be read as a denial, the County is incorrect that Applicants were obligated to bring a claim within 30 days. Although the FCC stated in the *2014 Order* that it sees "no reason why" claims brought under Section 6409(a) "cannot and should not be brought within 30 days" of a denial, it did not impose binding regulations to this effect as it did for EFR processing timeframes, instead leaving "enforcement of such claims . . . [to] courts of competent jurisdiction." *2014 Order*, ¶ 236. The circumstances here—where Applicants did not bring suit within 30 days because they reasonably believed the County's Memorandum was a communication inviting further submissions and that the dispute could still be resolved without resorting to litigation—may not have been explicitly foreseen by the Commission in its order, but are entirely consistent with the Commission's assertion that Section 6409(a) claims be commenced "expeditiously." Given the County's attempts at

obfuscation, the Applicants' "basis for equitable judicial remedies" has in no way "diminish[ed]," *id.* ¶ 236, and the Court should find that Applicants' counterclaims are timely.

> 2. The Applicants Were Not Required to Send a Deemed Grant Letter Within a 30-Day Timeframe or Sue to Enforce the Deemed Grant

Second, and in the alternative, the County asserts that even if the Application *was* an EFR, the 60-day processing timeline expired on July 17, 2017, and Applicants were obligated to send a deemed grant letter within 30 days of that date and then initiate suit to enforce the letter 30 days after that. As discussed above, the 60-day processing period was tolled following the June 22 meeting. But even if there was no tolling whatsoever, *nowhere* in the *2014 Order* or in the regulations does the Commission require that a deemed grant letter be sent within 30 days. The FCC requires only that it be sent "after the review period has expired." 47 C.F.R. § 1.40001(c)(4).

Nor were Applicants required to go to court to enforce their deemed grant. Although the *2014 Order* acknowledges that "an applicant whose application has been deemed granted *might* seek some form of judicial imprimatur for the grant by filing a request for declaratory judgment or other relief," ¶ 236 (emphasis added), this is not legally required: a deemed grant letter is legally sufficient on its own to establish carriers' rights to deploy, and municipalities are bound to abide by it or challenge it in court, bearing the burden of showing it was somehow deficient. A regime where every applicant is legally required to bring a declaratory judgment action for every single deemed grant would be inefficient and costly for all parties and create unnecessary strain on judicial resources, which is no doubt why the Commission declined to impose this requirement.[1]

---

[1] Nor would Applicants have had to bring suit within 30 days of the deemed grant letter, as the County incorrectly argues. A locality may not reveal its opposition to a deemed grant letter until well after 30 days of receipt when it, e.g., refuses to issue building permits. Regardless, the

14

### D. The Applicants Are Entitled to Attorney's Fees.

Finally, Applicants are entitled to costs and reasonable attorney's fees because Plaintiff's conduct deprived applicants of a federal right in violation of 42 U.S.C. § 1983. As Applicants discussed at length in their Opposition to Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. 35), the Planning Services' staff are final policymakers for purposes of Section 1983 liability. *Id.* at 5-11. Further, in failing to grant Applicants' Application as required by Section 6409(a), the Applicants have demonstrated that the staff did not act with "deliberate indifference" as the County suggested in its Motion to Dismiss, but instead acted deliberately to violate Section 6409(a). *Id*. at 11-13. Accordingly, this Court should find that Plaintiff violated Section 1983.

## IV.     CONCLUSION

Defendants respectfully request that this Court declare Defendants' Application deemed granted and that Applicants may begin construction; enjoin any action by the County contrary to this directive; and grant Defendants' request for costs and reasonable attorney's fees.

Respectfully submitted,

/s/ *Joshua S. Turner*
Joshua S. Turner
Sara M. Baxenberg
**WILEY REIN LLP**
1776 K Street, N.W.
Washington, D.C.  20006
Tel: (202) 719-7000
jturner@wileyrein.com
*Counsel for Crown Castle and T-Mobile*

July 16, 2018

---

question is moot because the County filed suit within 30 days, to which Applicants properly counter-claimed.

## CERTIFICATE OF SERVICE

I, Sara M. Baxenberg, hereby certify that on July 16, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

djohnson@douglas.co.us

        Respectfully submitted,
        /s/ *Sara M. Baxenberg*
        Sara M. Baxenberg
        **WILEY REIN LLP**
        1776 K Street, N.W.
        Washington, D.C. 20006
        Tel: (202) 719-7000
        Fax: (202) 719-7049
        *jturner@wileyrein.com*
        *Counsel for Crown Castle and T-Mobile*