IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03171-RM-NRN

BOARD OF COUNTY COMMISSIONERS FOR DOUGLAS COUNTY, COLORADO,

Plaintiff,

v.

CROWN CASTLE USA, INC. and
T-MOBILE WEST LLC,

Defendants.

**REPORT AND RECOMMENDATION ON
PLAINTIFF/COUNTER-DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS COUNT
TWO OF DEFENDANTS/COUNTER-PLAINTIFFS' COUNTERCLAIM
(DKT. #30)**

**N. Reid Neureiter
United States Magistrate Judge**

Now before the Court is Plaintiff/Counter-Defendant the Board of County Commissioners for Douglas County's ("Plaintiff" or "Douglas County") Motion to Dismiss Count Two of the First Amended Counterclaim. (Dkt. #30.) Judge Moore referred the Motion to Dismiss via an order of reference on January 2, 2018. Counterclaim Count Two is a claim for damages and attorneys fees against Douglas County under 42 U.S.C. §1983.

The Court has carefully considered the motion (Dkt. #30), Defendants/Counter-Plaintiffs Crown Castle USA, Inc. ("Crown Castle") and T-Mobile West LLC's ("T-Mobile" and collectively with Crown Castle, "Defendants" or "Company Defendants") response (Dkt. #35), and Plaintiff's reply. (Dkt. #40.) The Court has taken judicial notice of the

1

Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court recommends that the Motion be **GRANTED**.

1. **BACKGROUND**

This case involves an effort by a wireless telephone provider (T-Mobile) and a wireless facilities infrastructure company (Crown Castle) to make modifications to an existing cellular telephone antenna installation in Douglas County, Colorado. Generally, there is a tension between the desire of cellular or wireless telephone companies to make bigger antennas and larger facilities to expand networks to improve cellular telephone coverage, and local governments' desire to maintain zoning, historic, or esthetic restrictions on the size or design of wireless antennae tower installations. Congress has passed legislation, and the Federal Communications Commission ("F.C.C.") has issued regulations, seeking to provide expedited mechanisms for the resolution of these competing interests. This case is reflective of the tension that exists between local zoning authorities and cellular providers, and involves application of the federal legislation and regulations intended to address that tension.

Douglas County initiated this action for declaratory relief on December 29, 2017. According to the Complaint (Dkt. #1), on May 18, 2017, the Company Defendants submitted an Eligible Facilities Request ("EFR") application (the "Application") "to collocate and modify wireless facilities on an existing support structure in Douglas County." (*Id.* ¶ 2.) The pre-existing structure allegedly had been designed with "stealth" features to look like a standard Douglas County utility pole, rather than an obvious cellular tower. Douglas County says it denied the Application on June 29, 2017, because the proposed modifications defeated the "concealment elements" of the

structure, as they would more than double the width of the top ten or eleven feet of the existing structure. (*Id.* ¶¶ 2, 4.) According to Douglas County, with the proposed modifications, rather than looking like a utility pole, the revised structure would look like a giant marshmallow on a stick. (*Id.* ¶ 58.)[1] Douglas County claims its determination was made within the period required by F.C.C. regulations – what the Company Defendants call the "shot-clock." (*Id.* ¶ 3.)

Douglas County alleges that rather than challenging the adverse determination in court, as it was entitled to do, on October 24, 2017, T-Mobile "unilaterally declared the federal 60-day shot clock to have restarted, notwithstanding the fact that the County had denied the application months earlier." (*Id.* ¶ 7.) Then, when Douglas County did not make any further decision, T-Mobile declared that the "Eligible Facilities Request was now deemed granted" pursuant to regulations that allow a request to a local authority to be deemed "granted" if a definitive decision on an application is not made within the 60-day "shot-clock" period. (*Id.* ¶ 8.)

In sum, Douglas County's lawsuit requests a declaration that the Company Defendants' assertion of a "deemed granted" remedy is void, and that Company Defendants waived any challenge to the County's June 29, 2017, determination by failing to timely seek relief. Alternatively, even if the Company Defendants' May 18, 2017 application was still pending after Douglas County issued its June 29, 2017 determination, Douglas County seeks a ruling that the Company Defendants' request

---

[1] In a later filing, the Company Defendants dispute the marshmallow description, asserting instead that the updated facility would look more like a "cap on a pen" than a "marshmallow on a stick." (Dkt. #69 at 5-6).

did not qualify for approval as an EFR, and therefore is not subject to a "deemed granted" remedy. (*Id.* ¶ 9.)

The Company Defendants answered the Complaint and, not surprisingly, filed counterclaims. *See* Dkt. #28 (Answer and First Amended Counterclaims). The Company Defendants contend that Douglas County, in an effort to evade judicial review, never actually denied the Application. (*Id.* at 13, ¶ 2.) The Company Defendants allege that, instead, on June 29, 2017, Douglas County returned what it characterized as a "Pre-submittal Review," which contained staff comments on the Application and requested additional materials. (*Id.* at 19-20, ¶¶ 46, 49.) The Company Defendants argue that Douglas County's response, because it requested more information, tolled the "shot-clock"—the limited time within which Douglas County had to issue a decision. (*Id.* at 20, ¶ 51.)

T-Mobile agrees that on October 24, 2017, it sent a letter to Plaintiff "explaining that, under federal law, the Application does not substantially change the existing tower," and declaring that submission of this additional information (the October 24 letter) restarted the "shot-clock." (*Id.* ¶¶ 55-56.) Under the Company Defendants' formulation, the restarted "shot-clock" expired on November 18, 2017. And so, on December 1, 2017, without any new decision by Douglas County approving or denying the application, the Company Defendants sent Douglas County a letter notifying it that the Application was deemed granted by operation of law, and stating they intended to commence construction. (*Id.* at 21, ¶¶ 60-61.)

Count One of the Company Defendants' counterclaims alleges that Douglas County violated 47 U.S.C. § 1455 (and its associated regulation) by denying and failing

to approve an EFR for a modification of an existing wireless tower that does not substantially change the physical dimensions of such tower or base station. According to the Company Defendants, Douglas County's failure to approve the Application violates federal law, and therefore should be deemed granted.

The Company Defendants' Counterclaim Two alleges that Section 6409(a) of the Middle Class Tax Relief and Job Creation Act of 2012, codified at 47 U.S.C. § 1455, also known as the "Spectrum Act," creates a federal right because it requires State and local governments to approve a wireless carrier's valid EFR application. According to the Company Defendants, by failing to approve the Application, Douglas County has deprived the Company Defendants of a right, privilege, or immunity secured by the Constitution and laws of the United States (specifically the Spectrum Act), in violation of 42 U.S.C. § 1983.

The reason for inclusion of the § 1983 claim is that if the Company Defendants ultimately prevail and their Application is deemed granted, the Company Defendants would be entitled to damages and, in the court's discretion, an award of attorneys' fees and costs. *See* 42 U.S.C. § 1988(b) (in any action to enforce a provision of 42 U.S.C. §1983 "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . .."). An award of damages and attorneys' fees against a municipality or local government carries significant negative financial consequences. It is a big potential hammer to use against a local zoning authority assessing an EFR.

Douglas County now seeks to dismiss Counterclaim Count Two -- the § 1983 claim -- for failing to state a claim for relief. In very simple terms, Douglas County

argues that § 1983 and its potential for a damages award and an award of attorneys' fees does not apply to an allegedly erroneous denial of an EFR. The Court agrees and recommends that the Company Defendants' Counterclaim Count Two be dismissed.[2]

2. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the

---

[2] The Parties also have filed cross motions for summary judgment on the fundamental substantive issue in the case--whether the Company Defendants' Application should be deemed "granted" or not, and whether the Company Defendants' Application qualified as an EFR at all. (Dkt. ##61 & 62.) Briefing is not yet complete on these motions.

allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In this instance, the plausibility of the factual allegations is not an issue because Douglas County's Motion to Dismiss raises a pure legal question: may a wireless facility company enforce an alleged violation of the Spectrum Act via an action for damages and attorneys' fees under § 1983?

3. **ANALYSIS**

    a. **The § 1983 Counterclaim.**

Counterclaim Two is brought pursuant to 42 U.S.C. § 1983. This statute mandates the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Municipalities and other local government units are included among those persons to whom § 1983 applies. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). In *Monell*, the Supreme Court enunciated the rule for imposing § 1983 liability on a governmental entity:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 695.

Assuming a statutory right that may be enforced via an action under § 1983, to prevail, a plaintiff must establish "(1) that a municipal employee committed a constitutional violation [or violation of a federal right], and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 151 F.3d 1313, 1316 (10th Cir. 1998). The existence

of a policy or custom can be established many different ways, including demonstrating the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citation and quotations omitted). Final policymakers are those decisionmakers who "possess[ ] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

In this case, the Parties have engaged in extensive briefing and argument about whether Douglas County's Department of Community Development's Planning Services division ("Planning Services division") is the final policymaker for the purpose of imposing liability under § 1983. Douglas County argues that the Planning Services division cannot be the final policymaker because, under Colorado law, Douglas County is required to provide for a Board of Adjustment to hear appeals of any such decisions relating to zoning enforcement or administration. Colo. Rev. Stat. § 30-28-117(1).

But to answer the question whether Counterclaim Two states a viable Section 1983 claim or not, the Court need not delve too deeply into the question of whether Douglas County's Planning Services division staff are final policymakers for *Monell* purposes. This is because the United States Supreme Court has spoken definitively on

9

the question of whether an individual action under § 1983 may be used to enforce the limits on local zoning authority on cell tower installations set forth in § 332(c)(7) of the Communications Act of 1934, 47 U.S.C. § 332(c)(7). It cannot. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120-21 (2005) ("*Abrams*").

In *Abrams*, the rebuttable presumption that a federal right is enforceable under Section 1983 was rebutted by Congress' enactment in the Telecommunications Act (itself an amendment to the Communications Act of 1934) of a "comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Abrams*, 544 U.S. at 120 (citing *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)).

I find that the F.C.C.'s implementation of regulations has created a mechanism for enforcement of the statute at issue in this case – the Spectrum Act (implemented by F.C.C. regulations at 47 C.F.R. § 1.40001) – which is similar in certain respects to the statutory enforcement scheme at issue in *Abrams*. I further find that the policy considerations articulated in *Abrams*, which militated strongly against the existence of § 1983 claim in that case, are also present here. I therefore find that § 1983 may not be used as an independent enforcement mechanism to enforce individual rights that may exist under the Spectrum Act.

While the enforcement scheme in this case is not established in the statute itself, but is instead a creation of F.C.C. regulations, it would be incongruous to allow damages and attorneys' fees under § 1983 in this case of a local zoning authority allegedly improperly denying a permit to make modifications to an existing cellular facility, where the Supreme Court unanimously has held that § 1983 relief is not available in a very similar situation where a wireless communications permit was

improperly denied by a municipal zoning entity under the Communications Act of 1934, as amended by the Telecommunications Act.

Congress specifically delegated implementation and enforcement of the Spectrum Act to the F.C.C. as if the Spectrum Act were a part of the Communications Act of 1934. *See* 47 U.S.C. § 1403 (§ 6003 of the Spectrum Act). S*ee also Montgomery Cnty, Md. v. F.C.C.*, 811 F.3d 121, 125 (4th Cir. 2015) (noting that "Congress charged the F.C.C. with implementing the Spectrum Act"). Congress similarly declared that a violation of the Spectrum Act or a regulation promulgated under the Spectrum Act "shall be considered to be a violation of the Communications Act of 1934, or a regulation promulgated under such Act, respectively." 47 U.S.C. § 1403. In the face of the Supreme Court's *Abrams* precedent, the Court cannot find that a distinct claim under § 1983 exists to remedy a violation of the Spectrum Act. Pursuant to federal regulation, Congress has delegated enforcement of the Spectrum Act to the F.C.C., which has created the "deemed grant" enforcement mechanism and included a separate right to court action. A § 1983 claim cannot co-exist with this regulatory remedy.

Because a Section 1983 remedy is incompatible with the regulatory "comprehensive enforcement scheme" available for a cellular company wrongly denied a permit for an EFR, the Company Defendants' second counterclaim must be dismissed for reasons outlined in more detail below.

   b. **The Statutory and Regulatory Enforcement Scheme with respect to Eligible Facilities Requests**

In 2012, Congress enacted the Spectrum Act mandating that local jurisdictions may not deny, and shall approve, an EFR for a modification of an existing wireless tower or base station "that does not substantially change the physical dimensions of

11

such tower or base station." The Spectrum Act is codified at 47 U.S.C. § 1455(a)(1).
The F.C.C. then adopted regulations implementing this legislation. *See* 47 C.F.R.
§1.40001.[3]

Per the regulations, an EFR is defined as "any request for modification of an existing tower or base station that does not substantially change the physical dimensions of such tower or base station, involving (i) Collocation of new transmission equipment; (ii) Removal of transmission equipment; or (iii) Replacement of transmission equipment." 47 C.F.R. § 1.40001(b)(3).

The regulation also defines a "substantial change" within the meaning of the statute. A proposed modification "substantially changes the physical dimensions" of the tower if it adds more than 10 percent or more than 10 feet to the height (whichever is greater), or adds an appurtenance larger than 20 feet, or if "[i]t would defeat the concealment elements of the eligible support structure." 47 C.F.R. § 1.40001(b)(7)(i), (v).

To meet the Spectrum Act's objective to reduce delays in the review process and facilitate the rapid deployment of updated wireless infrastructure, the F.C.C. regulations require localities to approve a valid EFR application: "A State or local government may not deny and shall approve any eligible facilities request for modification of an eligible

---

[3] The Spectrum Act and its associated implementing regulation are explained at length in a Fourth Circuit decision, *Montgomery Cty., Md. v. F.C.C.*, 811 F.3d 121, 124-127 (4th Cir. 2015), which upheld the Spectrum Act and 47 C.F.R. § 1.40001 against Constitutional and Administrative Procedure Act challenges. The F.C.C. also issued an extensive Report and Order explaining the reasoning behind the implementing regulations codified at 47 C.F.R. § 1.40001. *See In re Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies*, 29 F.C.C. Rcd. 12865 (Oct. 17, 2014), *amended by* 30 FCC Rcd. 31 (Jan. 5. 2015) (the "Order").

support structure that does not substantially change the physical dimensions of such structure." 47 C.F.R. § 1.40001(c). Approval must come promptly—within sixty days from the date on which an applicant submits a request seeking approval, unless the State or local government determines that the application is not in fact a covered eligible facilities request. 47 C.F.R. § 1.40001(c)(2). The 60-day period (what the Company Defendants refer to as the "shot-clock") begins to run when the application is filed, and may be tolled only by mutual agreement or in cases where the reviewing State or local government determines that the application is incomplete. 47 C.F.R. § 1.40001(c)(3).

To toll the timeframe for incompleteness, the reviewing entity must provide written notice to the applicant within 30 days of the receipt of the application, "clearly and specifically delineating all missing documents and information." 47 C.F.R. § 1.40001(c)(3)(i). The timeframe for review then begins again when the applicant makes a supplemental submission in response to the State or local government's notice of incompleteness. Following a supplemental submission, the State or local government will have 10 days to notify the applicant that the supplemental submission did not provide the information identified in the original notice delineating missing information. 47 C.F.R. § 1.40001(c)(3)(ii) and (iii).

In a paragraph titled "Failure to Act", the F.C.C. regulations provide that in the event the reviewing State or local government fails to approve or deny a request seeking approval under this section within the timeframe for review, "the request shall be deemed granted," but the deemed grant "does not become effective until the applicant notifies the applicable reviewing authority in writing after the review period has expired (accounting for any tolling) that the application has been deemed granted." 47

C.F.R. §1.40001(c)(4). In other words, the reviewing authority is not permitted to just sit on its hands and do nothing, avoiding judicial review by preventing the exhaustion of administrative remedies. Failure of the reviewing authority to act within the limited period provided by neglecting to either grant or deny the application will cause the EFR to be deemed granted by operation of law once the appropriate notice is given. *See generally*, *Montgomery Cty.,* 811 F.3d at 126 (explaining the "deemed grant" remedy).

Importantly, in addition to the "deemed grant," the regulation specifically provides for a judicial remedy, stating that "[a]pplicants and reviewing authorities may bring claims related to Section 6409(a) in any court of competent jurisdiction." 47 C.F.R. § 1.40001(c)(5). The F.C.C.'s Order explains the F.C.C.'s expectation that any legal claims related to the Spectrum Act would fall into one of three categories:

> First, if the State or local authority has denied the application, an applicant might seek to challenge that denial. Second, if an applicant invokes its deemed grant right after the requisite period of State or local authority inaction, that reviewing authority might seek to challenge the deemed grant. Third, an applicant whose application has been deemed granted might seek some form of judicial imprimatur for the grant by filing a request for declaratory judgment or other relief that a court might find appropriate.

Order at ¶236. The three hypothesized types of legal claims are all in the form of declaratory or injunctive relief. The Order makes no mention of even the possibility of a damages award or an award of attorneys' fees. And, of course, neither the Spectrum Act, nor the implementing regulations, provides for an award of damages or attorneys' fees.

### c. The Existence of this Regulatory Enforcement Scheme precludes a more expansive remedy under Section 1983.

14

The Supreme Court in *Abrams* explained in detail that "§ 1983 does not provide an avenue for relief every time a state actor violates a federal law." *Abrams*, 544 U.S. at 119. And as the Supreme Court said in another setting, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 121 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under §1983." *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981). The Supreme Court has also explained that in all cases where it has been held that Section 1983 *is* available for violation of a federal statute, the Court has emphasized that the statute at issue did not provide for a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated. *Abrams*, 544 U.S. at 121.

The statute at issue in the *Abrams* case was Section 704 of the Telecommunications Act of 1996, Pub. Law 104-104 ("TCA"), codified at 47 U.S.C. § 332(c), which itself amended the Communications Act of 1934. As explained by the Supreme Court in *Abrams*, § 332(c) was attempting to address the tension between the need for expansion of national communication networks and local zoning practices. Under § 332(c), local governments could not "unreasonably discriminate among providers of functionally equivalent services," § 332(c)(7)(B)(i)(II), could not limit the placement of wireless facilities on the basis of the environmental effects of radio frequency emissions, § 332(c)(7)(B)(iv), were required to act on requests to locate wireless facilities "within a reasonable period of time," and any decision denying such a

15

request was required to be in writing and supported by substantial evidence. § 332(c)(7)(B)(ii) and (iii). The statute also provided a judicial remedy – any person adversely affected by a final decision or failure to act by a State or local government or instrumentality was entitled, within 30 days of such action or failure to act, to "commence an action in any court of competent jurisdiction." § 332(c)(7)(B)(v). And once a lawsuit is filed, the court is instructed to "hear and decide" the claim "on an expedited basis." *Id*. The remedies available under the TCA do not include compensatory damages and "certainly do not include attorney's fees and costs." *Abrams*, 544 U.S. at 123. The Supreme Court in *Abrams* noted, in contrast, that a § 1983 action can be brought much later than 30 days after the final action, need not be heard and decided on an expedited basis, and the successful plaintiff may recover not only damages but reasonable attorneys fees and costs under 42 U.S.C. § 1988. *Id.*

The Supreme Court in *Abrams* also took care to emphasize that liability for attorneys' fees in the context of a suit by a wireless company against a local government "would have a particularly severe impact," making "local governments liable for the (often substantial) legal expenses of large commercial interests for the misapplication of a complex and novel statutory scheme." *Abrams*, 544 U.S. at 123-24 (citing *Nextel Partners Inc. v. Kingston Twp.,* 286 F.3d 687, 695 (3d Cir. 2002) ("TCA plaintiffs are often large corporations or affiliated entities, whereas TCA defendants are often small, rural municipalities")).

The *Abrams* decision posited that the refusal to attach attorneys' fees to the remedy created in the TCA itself represented a congressional choice—one not to be evaded by resort to § 1983. In denying a § 1983 remedy, the *Abrams* court found that

"[e]nforcement of § 331(c)(7) through § 1983 would distort the scheme of expedited judicial review and limited remedies created by § 332(c)(7)(B)(v)." 544 U.S. at 127.

In the case at bar, the allegedly infringed federal right about which the Defendant Companies complain is the right to make an insubstantial change to an existing cellular facility. The purpose of both the statute creating that right (47 U.S.C. § 1455(a)(1)), and the regulation implementing the statute (47 C.F.R. § 1.40001), is generally the same as that reflected in § 332(c)(7) of the Telecommunications Act – the quicker approval of and installation of wireless and cellular technology around the country, while at the same time respecting certain limited esthetic and historic concerns of local governments. Insubstantial changes to existing facilities are not to be unduly delayed by local zoning processes, but substantial changes in size (as defined in the F.C.C.'s regulation), as well as changes affecting the "stealth" features of an existing facility, are not to be subject to the "deemed grant" remedy, and may be subject to local zoning ordinances.

Congress passed Section 6409(a) of the Spectrum Act in 2012. The provision is skeletal, consisting of essentially one substantive sentence (along with the definition of "eligible facilities"). It contains no explicit enforcement mechanism, but neither does it authorize a claim for damages or attorneys' fees for a violation by a State or local municipality. Instead, implementation and enforcement of the Spectrum Act was delegated by Congress to the F.C.C., and a violation of the Spectrum Act was deemed to be a violation of the Communications Act of 1934. *See* 47 U.S.C. § 1403.

It cannot be disputed that the Spectrum Act was adopted in 2012 against the historic backdrop of the TCA of 1996, with the intent of modifying the balance in the

TCA between the delay inherent with State or municipal permit approvals and the need to make timely, insubstantial changes to pre-existing facilities. But there is no indication that Congress, as a matter of policy, intended for the Spectrum Act to so severely tip the balance in favor of wireless companies that they should be awarded damages and attorneys fees for a mistaken municipal decision. As the Supreme Court said in *Abrams,* assessing damages and attorneys fees would mean that municipalities could be held liable for significant attorneys' fees and damages awards arising merely from the honest "misapplication of a complex and novel statutory scheme." *Abrams*, 544 U.S. at 123. Just the threat of a damages and attorneys' fees award might cause a municipality to improperly concede where there would otherwise be a legitimate basis for denying a proposed wireless facility improvement.

The Supreme Court decided *Abrams* in 2005. In passing the Spectrum Act, Congress would have been aware of the holding in *Abrams* that violations by local governments of 47 U.S.C. § 332(c)(7) were not to be enforced by resort to § 1983. And yet, Congress did not provide for a § 1983 remedy in the Spectrum Act. The F.C.C.'s regulations implementing the Spectrum Act, which provide for the specific remedy of deemed grant (and the accompanying right to bring a declaratory judgment enforcement action), also were adopted with knowledge that the Supreme Court had determined that § 1983 was not a remedy available to enforce the provisions of the Telecommunications Act. And the F.C.C. elected to not include any damages or attorneys' fee provision in its regulatory enforcement mechanism for the Spectrum Act.

Finally, the Company Defendants conceded at oral argument that no court anywhere has imposed § 1983 liability for a violation of the Spectrum Act. In light of the

Supreme Court's holding in *Abrams,* and absent a contrary statutory or regulatory directive, there is no basis for imposing liability under § 1983 in this case.

### 4. Conclusion

For these reasons, and because of the precedent set by *Abrams*, I conclude that enforcement of the Spectrum Act through a § 1983 claim would distort the enforcement scheme of "deemed grant" and judicial review which was created by the F.C.C.'s rulemaking process after appropriate delegation by Congress. I therefore **RECOMMEND** that Counterclaim Two of the Company Defendants' Counterclaims be **DISMISSED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge,** *Thomas v. Arn***, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colorado Dep't of Corrections***, 183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT

Date: December 18, 2018
Denver, Colorado

_N. Reid Neureiter_
N. Reid Neureiter
United States Magistrate Judge